United States District Court
Southern District of Texas
**ENTERED**
February 29, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DR. HESHAM MORSI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H-22-4510 |
| | § | |
| MARINEMAX INC., *and* GALEON | § | |
| U.S.A., INC., | § | |
| | § | |
| Defendants. | § | |

## ORDER

Pending before the Court is Defendant Marinemax Inc.'s Motion for Final Summary Judgment (Document No.44) and Defendant Marinemax Inc.'s Motion to Exclude Plaintiff's Damage Expert Robert Sanders (Document No. 43). Having considered the motions, submissions, and applicable law, the Court determines the Defendant's motion for summary judgment is granted, and the motion to exclude is denied as moot.

## I. BACKGROUND

This is a contract dispute. In November 2019, Plaintiff Dr. Hesham Morsi ("Morsi") purchased a boat from Defendant MarineMax, Inc. ("MarineMax"). The boat was a 2016 Galeon 380FLY, manufactured by Defendant Galeon U.S.A. Inc ("Galeon"). Morsi contends the boat subsequently had major mechanical defects related to the boat's fuel system. While there seems to be some contention regarding

what exactly was faulty (fuel lines or the boat's fuel tank). Morsi alleges that MarineMax and Galeon subsequently agreed to repair the boat. Morsi contends that the promised repairs never occurred. MarineMax contends the repairs agreed to, were for the fuel line and not the fuel tank, which Morsi now claims is defective. Morsi first filed suit in 2020; he subsequently dismissed the suit. Additionally, Morsi no longer owns the boat, which was repossessed because of non-payment.

Based on the foregoing, on December 29, 2022, Morsi filed suit against MarineMax and Galeon (Collectively, the "Defendants"). On March 23, 2023, Morsi amended his complaint asserting claims for: (1) breach of contract against Marinemax; (2) negligent misrepresentation against MarineMax regarding the arbitration clause; (3) breach of contract against Defendants for not honoring the repair plan; (4) promissory estoppel against the Defendants; (5) negligent misrepresentation against MarineMax for the statements made during his purchase of the boat; (6) fraudulent inducement against MarineMax; (7) breach of expressed and implied warranties against the Defendants; and (8) negligence against the Defendants. MarineMax now moves for summary judgment on all of Morsi's claims against it.[1]

---

[1] The Court Notes that Gallion has never made an appearance in this case or otherwise answered. However, the record indicates that Gallion is still a party to this matter.

## II.  STANDARD OF REVIEW

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the evidence in a light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion and the elements of the causes of action upon which the nonmovant will be unable to establish a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

But the nonmoving party's bare allegations, standing alone, are insufficient to create a material dispute of fact and defeat a motion for summary. If a reasonable jury could not return a verdict for the nonmoving party, then summary judgment is appropriate. *Liberty Lobby, Inc.*, 477 U.S. at 248. The nonmovant's burden cannot be satisfied by "conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.' " *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343

3

(5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). Uncorroborated self-serving testimony cannot prevent summary judgment, especially if the overwhelming documentary evidence supports the opposite scenario. *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 294 (5th Cir. 2004). Furthermore, it is not the function of the Court to search the record on the nonmovant's behalf for evidence which may raise a fact issue. *Topalian v. Ehrman*, 954 F.2d 1125, 1137 n.30 (5th Cir. 1992). Therefore, "[a]lthough we consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmovant, the nonmoving party may not rest on the mere allegations or denials of its pleadings but must respond by setting forth specific facts indicating a genuine issue for trial." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 735 (5th Cir. 2000).

## III.  LAW & ANALYSIS

MarineMax contends summary judgment is appropriate because: (1) the sales agreement was an "as is" contract that explicitly disclaimed any reliance on representations and warranties; (2) the economic loss rule bars any tort claim; (3) the existence of a contract bars promissory estoppel; (4) Morsi's negligence claim is time-barred; and (5) Morsi has no arbitration cause of action. Morsi contends there is a question of fact as to what "constitutes the 'sales contract' and that the alleged misrepresentation of making repairs negates the economic loss rule. Marinemax contends that the scope of the contract is a question of law.

4

## A.    Claims Based on The Sales Agreement

Marinemax contends the Purchase and Sales Agreement (the "Sales Agreement") is unambiguously an "as is" contract. MarineMax further contends that the Sales Agreement forecloses on all of Morsi's claims related to the condition of the boat. Specifically, MarineMax contends the provisions of the Sales Agreement foreclose Morsi's claims for breach of contract, negligent misrepresentation, fraud, negligence, and breach of warranty claims related to the condition of the boat. Morsi contends the Internal Inspection Checklist ("Checklist")[2] was also part of the contract, and Marinemax's "like new" representations negate the "as is" contract. Morsi further contends the Sales Agreement was ambiguous, and as such, there are questions of fact that bars summary judgment in this case.

The Texas Supreme Court has held, "A court may determine, as a matter of law, that multiple separate contracts, documents, and agreements were part of a single unified instrument." *Rieder v. Woods*, 603 S.W.3d 86, 94 (Tex. 2020). (holding that two instruments did not constitute a single contract, recognizing that the two instruments had different parties and that there was an integration clause). According to the Texas Supreme Court, "those who buy a product 'as is' accept the risk of potential defects, and thus cannot claim a seller's negligence caused their

---

[2] The Checklist was a document completed by MarineMax before Morsi became a customer or purchased the boat.

injuries." *New Tex. Auto Auction Servs., L.P. v. Gomez De Hernandez*, 249 S.W.3d 400, 407 (Tex. 2008). An "as is" clause "negates any contractual claims based on defects in the condition of the" yacht. *Ritchey v. Pinnell*, 324 S.W.3d 815, 822 (Tex. App—Texarkana 2010, no pet.). In Texas, "[a] contract is ambiguous only if it is subject to two or more reasonable interpretations after applying the pertinent rules of construction." *In re D. Wilson Constr. Co.*, 196 S.W.3d at 781 (Tex. 2006). A contract is unambiguous: "[i]f the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

Here, Morsi's live pleadings refer to the Sales Agreement as the contract at issue.[3] However, now Morsi contends the Checklist was provided at the same time as the Sales Agreement, and thus, he considered it a part of the contract. The Checklist was a document that was only executed by Marinemax and was not referred to as part of the Marinemax Contract until well into the process of litigating this case. Further, the Checklist was performed by MarineMax when they received the boat, a month before selling the boat to Morsi.[4] Morsi's live pleadings seem to be a judicial admission that the Sales Agreement was the contract at issue.

---

[3] *First Amended Complaint*, Document No. 2 at 2.

[4] *Defendant MarineMax Inc.'s Motion for Final Summary* Judgment, Document No.44, Exhibit A at 100:9–19 and 101:12–102:13 (*Dr. Hesham Morsi's Deposition*) [hereinafter *Morsi's Deposition*].

Additionally, the Sales Agreement is unambiguously an "as is" contract, as it has the "as is" language stated in bold in at least two places in the Sales Agreement.[5] Additionally, the Sales agreement explicitly declaimed any warranty while establishing it was an "as is" contract.[6]  When a buyer executes an agreement to purchase something "as is," he agrees to make his own appraisal of the bargain and accept the risk that he may be wrong. *Prudential Ins. Co. of Am. v. Jefferson Assocs.*, 896 S.W.2d 156, 161 (Tex. 1995). Where an "as is" disclaimer is conspicuous with all caps and bold type, "all implied warranties were effectively disclaimed," and "summary judgment was proper as to this issue." *Smith v. Radam, Inc.*, 51 S.W.3d 413, 416–17 (Tex. App.—Houston [1st Dist.] 2001, no pet.). Additionally, Morsi testified that he read and understood the Sales agreement, including the "as is" clause.[7] Accordingly, the Sales Agreement was unambiguous and an "as is" contract. Morsi acknowledges this fact in his deposition.[8]

---

[5] *Defendant Marinemax Inc.'s Motion for Final Summary* Judgment, Document No.44 at 3. *Also See First Amended Complaint, Document No. 17, Exhibit B at* 4–5. *(Purchase and Sales Agreement).*

[6] "THE BOAT, MOTOR AND ACCESSORIES BEING PURCHASED PURSUANT TO THIS AGREEMENT ARE SOLD BY SELLER 'AS IS' AND SELLER MAKES NO WARRANTIES ON ITS OWN BEHALF. . ." *First Amended Complaint*, Document No. 17, Exhibit B at 4 ¶ 2. *(Purchase and Sales Agreement).*

[7] *Morsi's Deposition, supra* note 4 at 89:14–90:9

[8] The Court notes that in his response in opposition to summary judgment, Morsi contends that agreement appearing both in lowercase and uppercase causes ambiguity.  It is a well-settled rule of construction that the same word or phrase used in different provisions or parts of a contract will be presumed, in the absence of language plainly

Further, even if the Checklist was a part of the contract (which the Court finds it was not), it does not state that anything on the boat is "like new." The Checklist merely states whether a boat component was" satisfactory" or "[needed] repair."[9] Nothing suggests that the checklist represents anything to be "like new" on the boat. Additionally, the Checklist only states the type of fuel system the Boat has and then lists specific system components, such as the fuel lines, as "satisfactory." This distinction is important because Morsi's testimony confirms the fuel tank on the boat was faulty.[10] However, the repair plan was only for the fuel lines, and there is nothing in the record, including the Checklist, indicating any opinion on the condition of the boat's fuel tank. Accordingly, it is not clear how the Checklist, even if taken as a representation, provides for a question of fact that would preclude summary judgment. In *arguendo*, even if a "like new" statement was made, it would be considered "puffing or opinion" under Texas law and not actionable as a wrongful inducement to enter an as-is contract. *CAS, Ltd. v. TM Aviation Partners*, LP, No.

---

indicating the contrary, to have been used in the same sense throughout the contract. *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 451 (Tex. 2008). *Shuford Dev. Co. v. Chrysler Corp.*, 449 F.2d 429, 436 (5th Cir. 1971). Accordingly, the Court finds, as a matter of law, that the contract is not ambiguous. The Court also notes Morsi has testified that he understood and had no concern regarding the Sales Agreement. *Morsi's Deposition*, *supra* note 4 at 89:14–90:9

[9] *Plaintiff's Response in Opposition to MarineMax Inc.'s Motion for Final Summary Judgment*, Document No. 48, Exhibit B at 1 (*150 Point Checklist*).

[10] *Morsi's Deposition*, *supra* note 4 at 44:8–21.

05-15-00779-CV, 2016 WL 4151455 (Tex. App.—Dallas Aug 4, 2016, no pet.).[11]

Therefore, the Court finds that the Sales Agreement was an unambiguous "as is" contract, which disclaimed "any representations or statements made by any agent, employee, or representative of [MarineMax], whether verbal or in writing."[12] Further, nothing in the record suggests that MarineMax made any representation of the boat's fuel tank. Thus, summary judgment is proper as it relates to Morsi's breach of contract[13], negligent misrepresentation, fraud[14], negligence[15], and breach of warranty claims related to the condition of the boat.

---

[11] The Court also notes as discussed above; the Sales Agreement disclaimed any reliance by Morsi on any representations made.

[12] The Sales Agreement explicitly stated that the Sales Agreement constituted the entire contract and disclaimed any representations made by MarineMax. *First Amended Complaint*, Document No. 17, Exhibit B at 4 ¶ 8. (*Purchase and Sales Agreement*).

[13] The Court notes that the repair/work order, which Morsi contends was another contract that was breached, also fails. First, the record is clear the repairs were for the fuel lines. The fact that the fuel tank leaked afterward is not related to the repairs done. Also, the Court notes that Morsi conceded he paid nothing for the repairs and cannot show any damages from the alleged inadequate repairs.

[14] The Court also notes that MarineMax contends Morsi has offered no proof of the intent required for his fraud-based claims. The Checklist was made a month before the sale of the boat and does not indicate any condition of the fuel tank of the boat. Accordingly, the record does not show any evidence to establish that MarineMax had the required intent to maintain a fraud claim against it.

[15] MarineMax also contends that Morsi's negligence claim is time-barred. Morsi did not directly respond to MarineMax's contention as it relates to his negligence claim being time-barred. Morsi did not address this issue in his response. Accordingly, the Court finds that summary judgment on Morsi's negligence claim is also proper due to it being time-barred.

B.    *Tort Claims*

Marinemax contends the economic loss rule bars Morsi's tort claims. Morsi contends he has alleged a duty that is separate from the duty under the contract. Specifically, the fact that the Defendants agreed to undertake repairs of the boat. However, Morsi stated on the record that the agreement to repair the boat was an oral and written contract.  Morsi's own amended complaint stated in part, "Dr. Morsi subsequently entered into a second written contract with the Defendants to a repair plan . . ." The economic loss rule provides that a contracting party who suffers purely economic losses must seek his remedy in contract, not tort. *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14–15 (Tex. 1996). Therefore, the economic loss rule forecloses on Morsi's additional tort claims for damages related to the condition of the boat.

However, Morsi contends he also suffered additional non-contract damages such as discarded clothing, lost fuel, costs associated with a substitute living arrangement, repair costs, loss of value of his purchase, and "other damages."[16] However, even if Morsi can overcome the economic loss rule, the Sales Agreement expressly disclaimed consequential, incidental, and indirect damages.[17]

---

[16] *First Amended Complaint*, Document No. 17 at 9, ¶ 37, at 13, ¶ 56, at 15, ¶ 72, at 16, ¶ 79, and at 19, ¶ 92.

[17] *First Amended Complaint*, Document No. 17, Exhibit B  at 4 ¶ 2. (*Purchase and Sales Agreement*).

Accordingly, the damages sought by Morsi sound in the contracts he entered into with MarineMax. Therefore, the economic loss doctrine bars Morsi's tort claims against MarineMax. Additionally, the Sales Agreement disclaimed the damages Morsi now seeks.

## C.    *Promissory Estoppel*

Marinemax contends the existence of a valid contract is a complete defense for Morsi's promissory estoppel claim. *Estate of Rashti v. Bank of Am. N.A.*, 782 F. App'x 322, 327 (5th Cir. 2019*); Fric v. Allstate Life Ins. Co.*, No. 6:21-CV-00042, 2023 WL 2652247, *9 (S.D. Tex. Mar. 26, 2023) (Tipton, J.) (granting summary judgment against promissory estoppel claim arising out of a contract). Here, there is a valid contract between the parties that Morsi does not contest the existence of. Additionally, Morsi did not address the promissory estoppel issue or offer any counterargument to Marinemax's position in his response. Thus, the existence of the contract precludes promissory estoppel.[18]

---

[18] The Court notes that Morsi attempts to separate the sale condition of the boat issue from the alleged work order and repair plan that occurred after the sale. To the extent that the plaintiff argues that Marinemax deviated from the written work order, the plaintiff's claim is for breach of the work order, and therefore, promissory estoppel is precluded.

## D. Arbitration Clause Claim

MarineMax contends Morsi waived arbitration by litigating his first lawsuit. The American Arbitration Association ("AAA") also rejected the arbitration.[19] Morsi contends that all condition precedents were met, and arbitration was required.

Waiver of a contractual right to arbitrate uses the same inquiry as a waiver of any other contractual right. *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022). The question is, "Did the plaintiff knowingly relinquish the right to arbitrate by acting inconsistently with that right?" *Id.* Here, Morsi filed a subsequent suit instead of seeking arbitration. Morsi subsequently dismissed the case without seeking to compel arbitration.[20] Additionally, he never moved the Court to compel arbitration once he commenced this current suit. Therefore, it is likely that Morsi waived arbitration through his actions in the previous case and this case.

In addition to the waiver issue, alleges that all conditions were met but acknowledges that mediation had not occurred.[21] Morsi also seems to contend

---

[19] The Sales Agreement required arbitration under the Commercial Arbitration Rules. The AAA required the parties to modify the agreement to proceed under the Consumer Arbitration Rules.

[20] Morsi previously filed a suit that he dismissed before subsequently filing this case. *Defendant MarineMax Inc.'s Motion for Final Summary* Judgment, Document No.44 at 1

[21] *MarineMax, Inc.'s Reply supporting its Motion for Final Summary Judgment*, Document No. 49 at 16 and *Plaintiff's Response in Opposition to MarineMax, Inc.'s Motion for Final Summary Judgment*, Document No. 48 at 14.

(without authority) that MarineMax should have amended the arbitration provision so that the AAA would take the arbitration.[22] Additionally, as stated above, mediation never occurred, which was a condition precedent to compel arbitration. Further, the AAA would not arbitrate as the Sales Agreement read. The Court does not find the argument that MarineMax refusing to amend the Sales Agreement equates to them breaching the agreement persuasive. Accordingly, the Court finds that MarineMax did not breach the arbitration agreement because Morsi waived arbitration when he initially filed his first lawsuit, and arbitration was not possible due to the AAA's refusal to take on the arbitration.

## IV.  CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendant Marinemax Inc.'s Motion for Final Summary Judgment (Document No.44) is **GRANTED**[23]. Further the Court

---

[22] *MarineMax, Inc.'s Reply supporting its Motion for Final Summary Judgment*, Document No. 49 at 17.

[23] The Court notes that the record indicates Galeon is still a party to this case. As such this is not a final judgment of the case.

**ORDERS** that and Defendant Marinemax Inc.'s Motion to Exclude the Plaintiff's Damage Expert Robert Sanders (Document No. 43) is **DENIED AS MOOT**.[24]

SIGNED at Houston, Texas, on this **29** day of February, 2024.

DAVID HITTNER
United States District Judge

---

[24] Based on the Court's foregoing decision on the MarineMax's motion for summary judgment, the motion to exclude is now moot at this time.